UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT ANNUNZIATA,

13 CV 5610

                    Plaintiff,                    COMPLAINT

     -against-                                    Case No.

                                                  JUDGE BERMAN

THE CITY OF NEW YORK, RAYMOND W. KELLY, as        DEMAND FOR JURY TRIAL
Commissioner of the New York City Police
Department, JOEL GOMEZ and THOMAS DIGGS,

                    Defendants.

Plaintiff ROBERT ANNUNZIATA, by his attorneys, KRAMER

& DUNLEAVY, L.L.P., complaining of the defendants, alleges as follows:

## I. PRELIMINARY STATEMENT

1.      This is a civil rights action in which plaintiff seeks

damages for the defendants' deprivation of his rights, privileges and immunities

secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Fourth

Amendment to the United States Constitution.  Plaintiff also appends state law claims

for assault and battery, false imprisonment and negligence.

2.      The defendants in this lawsuit have implemented

and are continuing to enforce, encourage and sanction a custom, practice and policy

of conducting unconstitutional stops and frisks of New York City residents, including

the plaintiff, by the New York City Police Department ("NYPD") and its police

officers.  Such stops and frisks are being performed without the reasonable

articulable suspicion required under the Fourth Amendment.

KRAMER & DUNLEAVY, L.L.P.
950 Third Avenue
10th Floor
New York, New York 10022
(212) 226-6662

1

3.       The widespread, unconstitutional stops and frisks conducted by the New York City Police Department have been caused by the customs, policies and procedures created, implemented, and encouraged by defendants THE CITY OF NEW YORK and RAYMOND W. KELLY.  Defendants THE CITY OF NEW YORK and RAYMOND W. KELLY have acted with deliberate indifference to the constitutional rights of those who would come in contact with police officers of the NYPD by: failing to properly screen, train and supervise NYPD officers; inadequately monitoring NYPD officers and their stop and frisk policies; failing to adequately discipline NYPD officers who engaged in unconstitutional stops and frisks; and encouraging, sanctioning and failing to correct the NYPD's unconstitutional stop and frisk practices.

## II.  THE PARTIES

### Plaintiff

4.       That at all times hereinafter mentioned, plaintiff ROBERT ANNUNZIATA was a resident of Bronx County, New York.

### Defendants

5.       That at all times hereinafter mentioned, defendant THE CITY OF NEW YORK was and still is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.  At all times hereinafter mentioned, defendant THE CITY OF NEW YORK maintained a police department, the NYPD, which acted as its agent in the area of law enforcement and for which it is ultimately responsible.

6.      That at all times hereinafter mentioned, defendant RAYMOND W. KELLY was the Commissioner of the New York City Police Department and, as such, was responsible for the customs, policies and/or practices of the New York City Police Department.  At all times hereinafter mentioned, defendant RAYMOND W. KELLY was responsible for the hiring, training, retention, supervision, discipline and control of the police officers under his command and who were employed by defendant THE CITY OF NEW YORK and the New York City Police Department.

7.      That at all times hereinafter mentioned, defendant JOEL GOMEZ was a police officer employed by defendant THE CITY OF NEW YORK, worked out of the 41st Precinct in the Bronx, and was acting in the scope of his employment and under color of state law.

8.      That at all times hereinafter mentioned, defendant THOMAS DIGGS was a police officer employed by defendant THE CITY OF NEW YORK, worked out of the 41st Precinct in the Bronx, and was acting in the scope of his employment and under color of state law.

### III.  JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, for civil actions arising under the Constitution of the United States, and 28 U.S.C. 1343, for deprivations, under color of State law, of rights secured by the United States Constitution.

10.      This Court has supplemental jurisdiction over the state constitutional and state law claims pursuant to 28 U.S.C. § 1367, as such claims

are so related to the claims within the original jurisdiction of this Court that they form part of the same case and controversy.

11.   Venue of this matter in the Southern District of New York is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

12.   That on November 13, 2012, a Notice of Claim was duly served upon defendant THE CITY OF NEW YORK and that said claim was duly verified as to nature of the claim; the time when, the place where and the manner in which the claim arose; and the extent of the plaintiff's injuries and damages.

13.   That more than thirty (30) days have elapsed since the presentation of said Notice of Claim upon defendant THE CITY OF NEW YORK, and the Comptroller thereof has failed, neglected and refused to pay, settle or adjust the claim of the plaintiff herein.

14.   That pursuant to General Municipal Law § 50-h, a hearing was held on January 11, 2013.

15.   That this action has been commenced within one year and ninety days after the cause of action herein accrued.

## IV. FACTS

16.   That at all times hereinafter mentioned, plaintiff was employed as a distribution mechanic by Consolidated Edison Company of New York.

17.   That on August 16, 2012 and in the course of his employment with Consolidated Edison, plaintiff was performing service box

inspections in the vicinity of Barry Street and Burnett Place, County of Bronx, City and State of New York.

18.    That upon completing the aforementioned service box inspections, plaintiff and his partner, Kieran Clarke, parked their marked Consolidated Edison truck on Barry Street in order to finish paperwork.  After finishing his paperwork, plaintiff exited his truck and walked down Tiffany Street in order to stretch his legs during which time he did not interact with anybody on the street or enter any commercial establishments.

19.    At approximately 1:30 p.m., plaintiff was lawfully walking on Tiffany Street between Barry Street and Burnett Place, on his way back to his truck, when he was stopped by a plainclothes police officer, defendant JOEL GOMEZ.

20.    That defendant JOEL GOMEZ stopped plaintiff without reasonable suspicion that plaintiff had committed, was committing or was about to commit a crime or criminal offense.

21.    That upon stopping the plaintiff, defendant JOEL GOMEZ asked plaintiff why he was walking in the area to which plaintiff responded that he worked for Consolidated Edison and was walking back to his truck which was parked around the corner.

22.    That notwithstanding plaintiff's response, defendant JOEL GOMEZ continued to ask plaintiff what he was doing in the area.

RAMER & DUNLEAVY, L.L.P.
950 Third Avenue
10th Floor
ew York, New York 10022
(212) 226-6662

23.     That after several minutes of this exchange, plaintiff offered to show defendant JOEL GOMEZ his employee identification whereupon the defendant grabbed plaintiff by the wrist and demanded that he get against the wall.

24.     That while plaintiff's back was against the wall, a second plainclothes police officer, defendant THOMAS DIGGS, ran towards the plaintiff and, without lawful justification, punched plaintiff on the side of his face, knocking plaintiff to the ground.

25.     That while plaintiff was on the ground, defendants JOEL GOMEZ and THOMAS DIGGS continued to assault and batter the plaintiff, kicking him in the back, all the while ignoring plaintiff's statement that he worked for Consolidated Edison.

26.     Thereafter, defendants JOEL GOMEZ and THOMAS DIGGS picked up the plaintiff after which defendant THOMAS DIGGS placed plaintiff in handcuffs, threw him against the wall and asked him what he was doing in the area.  Once again, plaintiff explained that he worked for Consolidated Edison, that he was walking back to his truck which was parked around the corner and that his identification was in his wallet.

27.     In response to plaintiff's explanation, defendant THOMAS DIGGS told the plaintiff that he was talking too much, asked why he kept saying the same thing over and over again and accused the plaintiff of either being high on drugs and/or intoxicated.  Defendant THOMAS DIGGS then, without reasonable suspicion that plaintiff was armed and dangerous and without his

permission and consent, searched through plaintiff's pockets and personal effects, removing his keys, wallet and identification.

28.     Upon realizing that plaintiff was telling the truth and worked for Consolidated Edison, defendants JOEL GOMEZ and THOMAS DIGGS removed plaintiff from handcuffs, returned his wallet and identification, and released him without issuing him a summons or charging him with having violated any crime.  Upon releasing the plaintiff, defendants said they were only letting him go because they did not want him to lose his job.

29.     That at no point did plaintiff observe defendants JOEL GOMEZ or THOMAS DIGGS fill out any paperwork; nor did defendants JOEL GOMEZ or THOMAS DIGGS ever advise the plaintiff why he had been stopped, questioned and searched.

30.     Following the subject incident, plaintiff returned to his truck where he told his partner, Kieran Clarke, what had happened.  Mr. Clarke proceeded to call their supervisor after which plaintiff went to the 41st Precinct located in the Bronx and filed a formal complaint.

31.     Upon information and belief, Sergeant Tamara Kingston of the 41st Precinct reported plaintiff's complaint to the Civilian Complaint Review Board ("CCRB").

32.     That upon information and belief, Glenn Brown, an investigator with the CCRB, performed an investigation into plaintiff's allegations that he was stopped, searched and assaulted by defendants JOEL GOMEZ and THOMAS RIGGS, Case No. 2012210629.

33.     That on June 10, 2013 and following its investigation, the CCRB wrote to the plaintiff advising him that it substantiated his allegations that defendant JOEL GOMEZ and THOMAS DIGGS stopped and searched him.

## AS AND FOR A FIRST CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF ROBERT ANNUNZIATA
## PURSUANT TO 42 U.S.C. § 1983

34.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "33" inclusive, with the same force and effect as though more fully set forth at length herein.

35.     That at all times mentioned herein, defendants THE CITY OF NEW YORK and RAYMOND W. KELLY implemented, enforced, encouraged and sanctioned the custom, policy and/or practice of the New York City Police Department of conducting stops and frisks of New York City residents without the reasonable articulable suspicion required under the Fourth Amendment to the United States Constitution.

36.     Upon information and belief, New York City residents were stopped 532,911 times by NYPD officers in 2012.  Of this number, 473,644 (89%), were completely innocent.  Of those residents who were also frisked, approximately fifty-six percent (56%) of the total, a weapon was only found two percent (2%) of the time.  Similarly, in 2011, New York City residents were stopped 685,724 times, of which number 605,328 were completely innocent (88%).

37.     Upon information and belief, for the period of July 1, 2012 through September 30, 2012, NYPD officers conducted nine hundred and

four (904) stops of New York City residents within the 41st Precinct, the Precinct in which plaintiff was unlawfully stopped and searched. Of the number of residents stopped, only thirty-six were arrested (4%) while only sixty-two were issued summonses (7%). Similarly, for the period of October 1, 2012 through December 31, 2012, NYPD officers conducted one thousand fifty-six stops (1,056) of New York City residents within the 41st Precinct. Of the number of residents stopped, only sixty-two were arrested (6%) while only forty-three were issued summonses (4%).

38.     That at all times mentioned herein, defendants CITY OF NEW YORK and RAYMOND W. KELLY failed to properly screen, train and supervise NYPD officers; inadequately trained NYPD officers relative to the legal and factual basis for conducting constitutional stops and frisks and for using force; failed to adequately discipline NYPD officers who engaged in unconstitutional stops and frisks and used excessive force; and encouraged, sanctioned and failed to correct the NYPD's unconstitutional customs, practices and policies.

39.     That the subject customs, policies and/or practices existed as a result of the deliberate indifference of defendants THE CITY OF NEW YORK and RAYMOND W. KELLY as to whether such customs, policies and/or practices would cause a deprivation of the constitutional rights of those New York City residents who would come in contact with NYPD police officers, including the plaintiff herein.

40.     That defendants THE CITY OF NEW YORK and RAYMOND W. KELLY knew or should have known that such customs, policies and/or practices would likely cause a deprivation of the constitutional rights of New

York City residents, including the plaintiff. Notwithstanding such knowledge, and with a deliberate indifference to the constitutional rights of New York City residents, defendants THE CITY OF NEW YORK and RAYMOND W. KELLY have implemented, enforced, encouraged, sanctioned and failed to correct such unconstitutional customs, policies and/or practices.

41.    That at all times mentioned herein, THE CITY OF NEW YORK and RAYMOND W. KELLY acquiesced in the deprivation of the constitutional rights of New York City residents that were caused by their own customs,  policies and/or practices.

42.    That by reason of the foregoing, defendants THE CITY OF NEW YORK and RAYMOND W. KELLY deprived the plaintiff of his right to be free of unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.

43.    That by reason of the foregoing, defendants THE CITY OF NEW YORK and RAYMOND W. KELLY deprived the plaintiff of his right not to be subject to excessive force as secured by the Fourth Amendment to the United States Constitution.

44.    That as a result of the foregoing, plaintiff was caused to and has suffered and sustained severe and serious personal injuries, conscious pain and suffering, mental anguish and economic loss, thus entitling plaintiff to an award of compensatory damages and attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF ROBERT ANNUNZIATA
## PURSUANT TO 42 U.S.C. § 1983

45.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "44" inclusive, with the same force and effect as though more fully set forth at length herein.

46.    That at all times mentioned herein, defendants JOEL GOMEZ and THOMAS DIGGS were acting under color of state law.

47.    That defendant JOEL GOMEZ stopped plaintiff without any reasonable suspicion that he had committed, was committing, or was going to commit a crime or criminal offense, thereby depriving plaintiff of his rights under the Fourth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

48.    That defendant THOMAS DIGGS frisked and searched plaintiff without any reasonable suspicion that he was armed and dangerous, thereby depriving plaintiff of his rights under the Fourth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

49.    That defendants JOEL GOMEZ and THOMAS DIGGS used unreasonable and excessive force in connection with their stop, frisk and search of the plaintiff, thereby depriving plaintiff of his rights under the Fourth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

50.    That defendants JOEL GOMEZ and THOMAS DIGGS unlawfully restrained plaintiff in connection with their stop, frisk and search of the

plaintiff, thereby depriving plaintiff of his rights under the Fourth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

51.   That as a result of the foregoing, plaintiff was caused to and has suffered and sustained severe and serious personal injuries, conscious pain and suffering, mental anguish and economic loss, thus entitling plaintiff to an award of compensatory damages and attorney's fees.

52.   That the acts of defendants JOEL GOMEZ and THOMAS DIGGS were intentional, wanton, reckless, malicious and with a deliberate indifference to plaintiff's constitutional rights, thus entitling plaintiff to an award of punitive damages.

### AS AND FOR A THIRD CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF ROBERT ANNUNZIATA.
### (ASSAULT and BATTERY)

53.   Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "52" inclusive, with the same force and effect as though more fully set forth at length herein.

54.   That defendant THOMAS DIGGS assaulted and battered the plaintiff by punching him on the side of the face, knocking plaintiff to the ground.

55.   That while plaintiff was on the ground, defendants JOEL GOMEZ and THOMAS DIGGS continued to assault and batter the plaintiff by kicking him in the back.

56.     That the actions of defendants JOEL GOMEZ and THOMAS DIGGS were willful, intentional and unwarranted, and without any just cause or provocation.

57.     That as a result of the foregoing, the plaintiff was caused to and has suffered and sustained severe and serious personal injuries, conscious pain and suffering, mental anguish and economic loss, thus entitling plaintiff to an award of compensatory damages.

58.     That the acts of defendants JOEL GOMEZ and THOMAS DIGGS were intentional, wanton, reckless, malicious and with a deliberate indifference to plaintiff's health, safety and constitutional rights, thus entitling plaintiff to an award of punitive damages.

### AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ROBERT ANNUNZIATA. (FALSE IMPRISONMENT)

59.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "58" inclusive, with the same force and effect as though more fully set forth at length herein.

60.     That defendants JOEL GOMEZ and THOMAS DIGGS restrained plaintiff without his consent and without reasonable cause to believe that plaintiff was committing or had committed a crime or criminal offense.

61.     That defendants JOEL GOMEZ and THOMAS DIGGS restrained plaintiff for more time than was necessary to permit an investigation into whether plaintiff was committing or had committed a crime or criminal offense and even though plaintiff did not present a threat of physical harm or flight risk.

62.     That the actions of defendants JOEL GOMEZ and THOMAS DIGGS were willful, intentional and unwarranted, and without any just cause or provocation.

63.     That as a result of the foregoing, the plaintiff was caused to and has suffered and sustained severe and serious personal injuries, conscious pain and suffering, mental anguish and economic loss, thus entitling plaintiff to an award of compensatory damages.

64.     That the acts of defendants JOEL GOMEZ and THOMAS DIGGS were intentional, wanton, reckless, malicious and with a deliberate indifference to plaintiff's health, safety and constitutional rights, thus entitling plaintiff to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF ROBERT ANNUNZIATA.
## (NEGLIGENCE)

65.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "64" inclusive, with the same force and effect as though more fully set forth at length herein.

66.     That at all times mentioned herein, defendants THE CITY OF NEW YORK and RAYMOND W. KELLY had a duty to exercise reasonable care in the hiring, training and supervision of its employees and police officers, including defendants JOEL GOMEZ and THOMAS DIGGS.

67.     That at all times mentioned herein, defendants THE CITY OF NEW YORK and RAYMOND W. KELLY had a duty to train, supervise,

correct and/or remove employees and police officers whose incompetence, vicious propensities and bad disposition were known to them.

68.    That at all times mentioned herein, defendants JOEL GOMEZ and THOMAS DIGGS were incompetent, had vicious propensities and were of a bad disposition.

69.    That at all times mentioned herein, defendants THE CITY OF NEW YORK and RAYMOND W. KELLY had knowledge of the incompetence, vicious propensities and bad disposition of defendants JOEL GOMEZ and THOMAS DIGGS.

70.    That at all times mentioned herein, defendants THE CITY OF NEW YORK and RAYMOND W. KELLY had knowledge of facts which would have caused a reasonably prudent person to conduct an investigation which would have uncovered incompetence, vicious propensities and bad disposition of defendants JOEL GOMEZ and THOMAS DIGGS.

71.    That at all times mentioned herein, defendants THE CITY OF NEW YORK and RAYMOND W. KELLY could have reasonably anticipated that the incompetence, vicious propensities and bad disposition of defendants JOEL GOMEZ and THOMAS DIGGS would be likely to result in injury to others.

72.    That defendants THE CITY OF NEW YORK and RAYMOND W. KELLY were negligent in the hiring, training, supervision, retention and discipline of defendants JOEL GOMEZ and THOMAS DIGGS as follows: in ignoring the bad disposition, incompetence and vicious propensities of said police officers; in failing to conduct an investigation into the incompetence, bad disposition

and vicious propensities of said police officers; in placing said police officers in a position to cause foreseeable harm to citizens, including the plaintiff; in failing to prohibit said police officers from conducting stop and frisks; in failing to correct or remove said police officers despite knowledge of their incompetence, bad disposition and vicious propensities; in failing to properly supervise said police officers in their performance of stop and frisks and use of force; in failing to properly train said police officers in constitutionally acceptable stop and frisk practices and the use of force; in failing to implement an adequate protocol, practice or policy to ensure that its officers conducted constitutional stop and frisks; in failing to make reasonable and necessary modifications in law enforcement policies, practices and procedures relative to stop and frisks; in failing to train and supervise employees and police officers in the performance of stop and frisks and the use of force; in failing to properly train and supervise employees and police officers in the performance of stop and frisks and the use of force; in failing to implement an adequate protocol, procedure or policy relative to the stop and frisk procedures and the use of force; in violating and/or otherwise ignoring protocols and policies then existing for the stop and frisk of citizens and the use of force; in failing to use reasonable care in the employment, training, supervision and retention of its employees; in hiring, training, and retaining incompetent personnel;  in failing to conduct an adequate and appropriate investigation; and, in further failing to exercise that degree of due care as a reasonable person under the same or similar circumstances.

73.     That as a result of the foregoing, plaintiff was caused to and has suffered and sustained severe and serious personal injuries, conscious

pain and suffering, mental anguish and economic loss, thus entitling plaintiff to an award of compensatory damages.

WHEREFORE, based upon the foregoing, plaintiff respectfully requests that judgment be entered:

1.    Awarding plaintiff full and compensatory damages in an amount to be determined by the jury; and

2.    Awarding plaintiff full and fair punitive damages in an amount to be determined by the jury; and

3.    Awarding plaintiff interest from August 16, 2012; and

4.    Awarding plaintiffs reasonable attorney fees pursuant to 42 U.S.C. § 1988; and

5.    Granting such other relief as this Court may deem just and proper.

Dated:  New York, New York
         August 12, 2013

KRAMER & DUNLEAVY, L.L.P.
Attorneys for Plaintiff

By: Jonathan R. Ratchik (JR6539)
A Member of the Firm
950 Third Avenue
New York, New York 10022
(212) 226-6662